# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Case No. 20-cr-382 |
| | ) | |
| v. | ) | Judge Sharon Johnson Coleman |
| | ) | |
| EDWARD SCHMIDL | ) | |
| | ) | |

## ORDER

This tangled dispute arises from different civil and criminal dockets.  Defendant Edward Schmidl pled guilty to embezzlement in his criminal case before this Court.  The Court entered a Restitution Order [46] requiring Schmidl to pay his victim, Morton & Associates ("Morton"), a total of $171,708.00.  Morton retained the Peacock Law Group to collect on that Restitution Order.  Schmidl, serving as a relator, settled a separate False Claims Act ("FCA") civil case before Judge Valderrama, *Schmidl, et al. v. Greager, II, et al.*, 21-cv-00526 (N.D. Ill.).  The law firm Loevy & Loevy ("Loevy") represented Schmidl in the *Greager* civil case, but not in his criminal case.  Morton was not a party to *Greager*.  Neither Loevy nor Morton is a party to this criminal case.

To collect on the criminal Restitution Order, Morton obtained an abstract of judgment on this criminal docket and served a citation to discover assets (the "Citation") on Loevy, hoping to obtain the *Greager* settlement attorneys' fee award.  A succession of motions followed.  Loevy filed a motion to quash the Citation [77].  Morton filed a motion for turnover of funds [83] and a motion for a rule to show cause [89] against Loevy attorney Dan Twetten.  For the following reasons, however, the Court is not satisfied that it has jurisdiction to resolve this dispute, so the Court dismisses the supplementary proceedings and strikes the pending motions [77, 83, 89].  To the extent the Court's jurisdictional ruling does not moot the motion for a rule to show cause [89], the Court denies that motion on its merits.

BACKGROUND

The *Greager* case is separate from Schmidl's criminal case. Schmidl retained Loevy as his legal representative for the *Greager* case on December 16, 2020. (Dkt. 77 at 19.) As part of the retainer agreement, Schmidl assigned to Loevy "[a]ny interest [Schmidl] may have in the Statutory Fees [awarded under federal whistleblower laws]" and "any future interest [Schmidl] may acquire in the Statutory Fees." (*Id.* at 16.) Schmidl also agreed that "[i]n the event [Loevy is] entitled [] to these Statutory Fees as [the] prevailing part[y], the Statutory Fees shall be paid by the Defendants in this litigation, and under no circumstances by the Client, except in the event that Client breaches this Agreement and elects (without consent of [Loevy]) to accept any settlement that does not include all or a portion of these Statutory Fees." (*Id.* at 17.)

The case settled after the United States intervened. The *Greager* Settlement[1] provided that "the United States shall pay $113,681.98 to Relator, [i.e., Schmidl,]" but that the United States would offset "Relator's Share until Relator satisfies the judgment debt owed to the United States in" this criminal case, 20-cr-382. (*Greager* Settlement at p. 3 ¶ 2.) It also stated as a "recital" that "Relator claims entitlement under 31 U.S.C. § 3730(d) to a share of the proceeds of this Settlement Agreement and to Relator's reasonable expenses, attorneys' fees and costs." (*Id.* at p. 2 ¶ F.) The *Greager* Settlement became effective on July 12, 2023. (*See id.* at p. 9 ¶ 25; *id.* at p. 12.)

On October 12, 2023, on this criminal docket, Morton served Loevy and the law firm that represented the *Greager* defendants—Ekl, Williams & Provenzale ("Ekl")—with citations to discover assets. Morton asserts that the *Greager* attorneys' fees are Schmidl's property, not Loevy's, and that Morton has a higher priority claim to the fees than Loevy. Loevy served Morton with its

---

[1] Loevy filed the *Greager* settlement agreement on this docket. (*See* Dkt. 77 at 27.) It is also available on the *Greager* case docket, 21-cv-00526 (Dkt. 25). The Court will cite the settlement as "*Greager* Settlement."

"Objections to Citation to Discover Assets" on December 13, 2023, stating that it "does not hold or otherwise possess any asset of judgment debtor Edward Schmidl." (Dkt. 83, Ex. 1.)

Ekl responded to Morton with a declaration attaching the *Greager* Settlement but noting that "[t]he 'Settlement Amount' (as defined in paragraph 1 of the settlement agreement) did not include Greager's payment to Loevy & Loevy of funds to satisfy the attorney's fee claim." (*Id.*, Ex. 2.). Instead, an Ekl attorney says he "negotiated a settlement of Schmidl's attorneys' fees claim that provided for a payment of $13,500 to Loevy," and that he caused that payment to be made to Loevy in August 2023. Ekl, on behalf of the *Greager* Defendants, separately "caused the payment of the whistleblower Settlement Amount to be paid to the government in August 2023." (*Id.*)

As part of its declaration, Ekl attaches emails between Loevy, Ekl, and the government. Apparently, the government told the parties in *Greager* that there was an error in paragraph 7 of the *Greager* Settlement, which addressed relator's attorneys' fees. All parties in *Greager* appeared to agree that paragraph 7 of the *Greager* Settlement should have been amended to clarify the relator attorneys' fees provision. (*Id.*, Ex. 2, Ex. D.) But paragraph 7 of the *Greager* Settlement was not amended. As entered on the docket, it reads: "Relator, for himself, and for his … attorneys … releases [Greager's co-defendant] … from any liability to Relator … under 31 U.S.C. § 3730(d) for expenses or attorneys' fees and costs." (*Greager* Settlement at pp. 5 ¶ 7). Although Ekl describes the omission of Defendant Greager as a "scrivener's error," the final paragraph 7 releases only Greager's co-defendant, and not Greager himself. (Dkt. 83, Ex. 2 ¶ 3 n.1.) Ultimately, though, Ekl and Loevy negotiated the attorneys' fees claim separately, reported those negotiations to the government, and agreed to the $13,500 figure for all attorneys' fees. (*Id.*)

There is almost certainly more to the *Greager* settlement than is before this Court, and there are at least three sides to the story. So, to be clear, this factual background is meant only to identify

3

the *possible factual disputes* presented to the Court for the purposes of this order.  That background is relevant to the Court's reasoning as to jurisdiction.

**DISCUSSION**

1. **Citation Proceedings**

The procedural posture of this dispute is unusual.  As always, the Court must ensure it has jurisdiction; "[s]ubject-matter jurisdiction is the first issue in any case." *Ware v. Best Buy Stores, L.P.*, 6 F.4th 726, 731 (7th Cir. 2021) (quoting *Miller v. Southwest Airlines Co.*, 926 F.3d 898, 902 (7th Cir. 2019)).  The Court has an "independent obligation" to determine whether it has jurisdiction to hear a case, *id.*, and must dismiss the case if it does not.  Fed. R. Civ. P. 12(h)(3).

This Court's original criminal jurisdiction under 18 U.S.C. § 3231 ended with the entry of final judgment.  *United States v. Wahi*, 850 F.3d 296, 299–300 (7th Cir. 2017).  Morton's motion implies that the Court can exercise supplemental or ancillary jurisdiction under Fed. R. Civ. P. 69 to adjudicate Morton's collection attempt.  Under ordinary circumstances, that position would be uncontroversial.  Federal courts may rely on ancillary jurisdiction to "manage [their] proceedings, vindicate [their] authority, and effectuate [their] decrees." *Harrington v. Berryhill*, 906 F.3d 561, 567 (7th Cir. 2018) (citation omitted).  But neither Morton nor Loevy is a party to this case, and Morton's request is more complicated than merely identifying Schmidl's property.

Rule 69 does not permit courts to hear new claims against new parties under the guise of supplemental proceedings: "a Rule 69 [] proceeding to collect a judgment from a third person not party to the original suit is within a court's ancillary jurisdiction, *providing 'the additional proceeding does not inject so many new issues that it is functionally a separate case.'*" *Yang v. City of Chicago*, 137 F.3d 522, 526 (7th Cir. 1998) (emphasis added) (quoting *Wilson v. City of Chicago*, 120 F.3d 681, 684 (7th Cir. 1997)).  There are no bright line rules in such cases.  Instead, the "the exercise of ancillary jurisdiction [is] discretionary based on [1] the extent to which the new issues are closely connected to the original

dispute, [2] whether there exists some independent basis for jurisdiction over the new claims, and [3] whether the facts suggest it would be prudent to do so." *Harrington*, 906 F.3d at 568 (collecting cases).

Even the most basic question in this dispute is unsettled—that is, whether the fees Loevy collected belong to Loevy or Schmidl. The legal and factual issues only get more complicated from there. For instance, a court will have to decide whether attorneys' fee awards under the FCA are awarded directly to the relator or to the relator's attorneys. If a court settles that question, it might have to determine whether Loevy's retainer agreement, in which Schmidl assigned his statutory fee rights to Loevy, changes the calculus. And if both parties have a claim to the fees, a court will have to decide which claim has priority. These issues bring the dispute closer to a separate lawsuit than a proper supplementary proceeding. *See Nichols v. Longo*, 22 F.4th 695, 699 (7th Cir. 2022) ("our [ancillary] jurisdiction does not extend to a state law contract dispute after the original litigation has ended, even if the dispute is between a party and his attorney") (citing 13 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3523.2 (3d ed. Supp. 2021)).

There are thorny factual issues here as well. The facts before the Court are presumably not exhaustive of the *Greager* case and settlement process. But even on those limited facts, Morton seems to suggest that Loevy fraudulently obtained the *Greager* attorneys' fee payment. (*See* Dkt. 83 at 3 (contending that "[t]hrough an irregular and legally unenforceable 'side deal,' the [*Greager* attorneys' fees] were diverted to Loevy & Loevy rather than paid in the ordinary course of business to Morton & Associates consistent with its rights as a crime victim").) None of those facts overlap in any way with the facts of Schmidl's criminal case.

Loevy simply contends that it does not hold any property belonging to Schmidl. Whether Loevy is right appears to be a dispute of fact and law quite different from Schmidl's criminal case. That is not the kind of dispute over which the Court can exercise supplemental jurisdiction. *See Pucci*

*v. Somers*, 962 F. Supp. 2d 931, 937–38 (E.D. Mich. 2013) (Lawson, J.) ("[W]here there is a genuine dispute over whether the money, credits, or other property in the hands of a third party actually belong to the judgment debtor, courts must be sensitive to the possibility that ancillary enforcement jurisdiction may not exist.") (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S. Ct. 1673, 128 L. Ed. 2d 391 (1994) ("It is to be presumed that a cause lies outside this limited jurisdiction[.]")).

The Court finds that the Citation injects new issues into this matter such that it presents a functionally separate case. The Court therefore concludes that it lacks jurisdiction to adjudicate the legal issues raised by the Citation.

**2. Motion for Rule to Show Cause**

To the extent Morton's motion for a rule to show cause [89] is not mooted by this order, the Court denies the motion on its merits. Morton asserts that Loevy attorney Dan Twetten failed to appear for a citation hearing and failed to produce documents. On that basis, Morton requests the Court issue an order to show cause why Twetten should not be held in contempt. But the evidence presented in the parties' briefing contradicts Morton's assertions. The Court can find no evidence, attached to the briefing or anywhere on the docket, of Twetten failing to appear at a citation examination set by order or agreement. Rather, the parties apparently agreed to postpone any examination until after the Court resolved their cross-motions. (*See* Dkt. 90-3.) Twetten, on behalf of Loevy, also served and briefed Loevy's Objections in good faith under the Court's order.

Setting aside Morton's unsubstantiated assertions, Morton's other requested relief is unclear. Morton seems to request that the Court order Twetten to appear for examination and then *prepare* to hold Twetten in contempt if he fails to do so. (*See* Dkt. 89.) Morton's counsel confirmed to Loevy that "[t]he purpose of [his motion] is so that if Loevy's motion to quash fails, the court will order [Twetten] to appear for examination. Nothing more or less than that." (Dkt. 90-3 at 2.) That is not

what the motion says. (*See* Dkt. 89 at 1 (requesting the Court order Twetten to "show cause why the court should not hold him in contempt *for failing to appear for a citation [examination]*") (emphasis added).) Despite Loevy raising the apparent mischaracterization by Morton's counsel, and disappointingly in the Court's view, Morton's counsel refused to correct the record. The Court will not issue a rule to show cause over conduct that has not occurred (and where the Court has no reason to believe Twetten would engage in such conduct). Morton's motion [89] is denied.

**CONCLUSION**

For these reasons, the Court dismisses the Citation proceeding for lack of subject matter jurisdiction, dismisses Loevy from this case, and strikes the related pending motions [77, 83, 89].

**IT IS SO ORDERED.**

Date: 4/12/2024

Entered:

_____
SHARON JOHNSON COLEMAN
United States District Judge